759 S.E.2d 716

In the Matter of Charles William BERGER, Respondent.

Appellate Case No. 2013–002535.

No. 27377.

Supreme Court of South Carolina.

Submitted Jan. 27, 2014.
Decided April 9, 2014.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, for Office of Disciplinary Counsel, both of Columbia.

Charles William Berger, of Florida, pro se.

## DISCIPLINE IMPOSED

PER CURIAM.

Respondent is licensed to practice law in Florida;[1] he is not licensed to practice law in South Carolina. In May 2013, the Office of Disciplinary Counsel (ODC) filed Formal Charges against respondent alleging that, by use of the Internet, he solicited clients in South Carolina and represented clients in two separate legal matters before the courts of this state. Respondent did not answer the Formal Charges, was found to be in default, and is therefore deemed to have admitted the factual allegations made in those charges. See Rule 24(a),

---

[1]. Respondent is also admitted to the Pennsylvania Bar. He practices law from Palm Beach County, Florida.

RLDE, Rule 413, SCACR. Following an evidentiary hearing in which respondent did not appear, the Hearing Panel issued a Panel Report recommending, respondent: 1) be prohibited from seeking any form of admission in South Carolina for five years; 2) that he reimburse all fees and costs paid by the South Carolina clients harmed by his misconduct within thirty (30) days of the date of discipline; and 3) that he be required to pay the costs of the proceedings within thirty (30) days of the date of discipline, in addition to other sanctions. Neither ODC nor respondent filed exceptions to the Panel Report and the matter is now before the Court for consideration.

## FACTS

### Matter I

In 2011, Mr. and Mrs. Doe, residents of South Carolina, were having difficulty paying the mortgage on their home and were facing foreclosure; the lender removed the foreclosure action from the active roster to attempt loss mitigation or loan modification. In the spring of 2012, Mrs. Doe conducted an Internet search to locate a lawyer and completed a form on a mortgage modification website. Several companies responded, including respondent's law firm, the Law Offices of C. William Berger, Esquire, which sent the Does a letter offering assistance.

Mrs. Doe contacted respondent's law firm for assistance in avoiding foreclosure. She inquired about the effect of respondent being in Florida and, in reply, was told "Yes . . . you will have a local attorney. . . ." Thereafter, the Does signed a fee agreement, paid a retainer of $1,500.00, and agreed to have the law firm withdraw a monthly fee from their bank account. The Does received emails addressing how long the matter would take and stating "[w]e have never lost a home . . . that is because we only take on clients that we can help . . . and have a valid case." The Does received a "Welcome Email" stating the firm had contacted the Does' lender and requested the Does complete a form and send requested documents. The Does completed the form and sent the requested documents. Over a three month period, the Does received the same "Welcome Email" on three occasions.

In August 2012, the Does received an email from their lender advising it was unable to proceed with the loss mitigation process because it had not received certain documents and it had filed a Motion to Restore the foreclosure proceeding to the roster. Mrs. Doe contacted respondent's law firm and forwarded the lender's letter and motion by email. She was again sent the "Welcome Email." After repeated attempts to contact the law firm, Mrs. Doe was notified on August 24, 2012, that the law firm had filed a response to the lender's motion. As of this time, neither of the Does had spoken with respondent or any other lawyer with his firm.

In the meantime, respondent's law firm repeatedly told Mrs. Doe that a "negotiator" would be assigned to assist with the loan modification process. When the negotiator contacted Mrs. Doe on August 24, 2012, the negotiator did not mention the lender's Motion to Restore and advised what to do "if you are currently behind or do fall behind on your mortgage payments."

On August 28, 2012, Mrs. Doe spoke with the lender who requested she submit several of the same documents she had given to respondent's law firm. Mrs. Doe communicated this request to the negotiator who then requested the same documents that Mrs. Doe had already submitted to the law firm.

On September 20, 2012, Mrs. Doe received notice that a hearing in the foreclosure case was scheduled for October 3, 2012. Mrs. Doe notified the negotiator who responded, "[t]his is a hearing due to not paying on your mortgage, I am going to forward this over to the correct department and have the attorney give you a call." From September 20 until the morning of the hearing, Mrs. Doe sent at least seventeen email messages to representatives of respondent's law firm asking to speak with her lawyer, asking for the lawyer's name, and inquiring about the hearing. She received a few responses, none of which answered her questions. At one point, she received an email stating, "[w]e are waiting to hear back from your attorney, [Lawyer A]."[2] According to the Formal Charges, Lawyer A had not been retained by respondent's firm to represent the Does.

---

2. The law firm identified Lawyer A by name; Lawyer A is authorized to practice law in South Carolina.

On several occasions, an employee of the law firm told Mrs. Doe that the employee had been consulting with a lawyer in the law firm named "Lynn." Mrs. Doe was not put in touch with "Lynn" or given Lynn's last name or contact information.

On the day of the October 3, 2012, hearing, Mrs. Doe received an email from the employee stating "Lynn" had "Fed–Ex'd" a motion to the judge yesterday. The email further stated "there is a conflict with the Attorney's schedule for the hearing. HOWEVER, speaking with Lynn . . . it is advised that you go to the hearing and State [sic] that you have an attorney, and your case is being handled, and there was a conflict with her schedule."

Court records indicate "Defendant's Motion to Dismiss for Failure to State Cause of Action and Improper Restablishment of the Lost Note" was sent by Federal Express listing the Does' name at respondent's return address. The motion was not signed by the Does and did not list a lawyer on behalf of the Does. The motion was improper as this was not a "lost note" case. Further, respondent's law firm did not serve a copy of the motion on counsel for the lender. In addition, the Does were not provided with a copy of the motion and were neither consulted nor advised regarding its contents. At the time of the hearing, neither of the Does had spoken with respondent or any attorney at his law firm.

Moments before the hearing, a representative of the law firm sent Mrs. Doe an email with the name and telephone number for another attorney, Lawyer B, licensed to practice law in South Carolina. Lawyer B did not appear at the hearing. Respondent's firm had not retained Lawyer B to handle the Does' case.

At the hearing, Mrs. Doe informed the judge that respondent was representing she and her husband and had a scheduling conflict. Counsel for the lender stated no one in her law firm had been contacted by an attorney on behalf of the Does. The judge took evidence from the lender; the judge held the matter in abeyance for three weeks to allow Mrs. Doe the opportunity to submit documentation of active loan modification negotiations.

Between October 3 and October 18, 2012, Mrs. Doe sent at least sixteen email messages to employees of respondent's law

firm asking to speak to an attorney and requesting the documentation requested by the judge. She was not able to speak with a lawyer and did not receive any documentation verifying she was in active negotiations to modify the loan. Mrs. Doe was repeatedly told that "Lynn" was handling the matter.

The Does were not able to submit the required documentation to the judge. Mrs. Doe informed two of respondent's employees that a sale date was scheduled for December 3, 2012. In the weeks leading up to the sale, Mrs. Doe sent repeated email messages to the law firm asking questions, requesting a lawyer, and requesting a phone call. According to the Formal Charges, the employees "continued to put Mrs. [Doe] off, claiming that they were waiting to hear from the lender and promising that they would postpone the sale of the property."

On November 14, 2012, an employee forwarded Mrs. Doe an email message from a "litigation paralegal" containing information about the South Carolina procedures for filing a notice of appeal copied from the Internet. The email advised the deadline for filing an appeal was November 22, 2012. Mrs. Doe responded with questions about the appeal process, including whether respondent's law firm would assist with the appeal. No one responded to her questions.

On November 20, 2012, an employee emailed Mrs. Doe and advised that she contact the Greenville County Clerk of Court for information, "tell them that you are filing an appeal & get more info (exactly who to make the check payable to and if there is a specific appellate form or if the notice of appeal is sufficient). If they are paying cash, that is easiest, but from what I found above it looks like it would be payable to Greenville County Circuit Court." Mrs. Doe inquired about the effect an appeal would have on the sale date but did not receive a response.

The following day, Mrs. Doe contacted the lender's counsel directly. Mrs. Doe successfully postponed the sale date. The Does hired a South Carolina lawyer to assist with the foreclosure and loan mediation.

From June 2012 through February 2013, respondent continued to make monthly drafts from the Does' bank account for attorney's fees.

### Matter II

The Roes are residents of South Carolina. On May 27, 2011, the Roes' lender filed a foreclosure action in Lexington County. No answer was filed and no attorney made an appearance.

In February 2012, the Roes hired respondent to represent them in the foreclosure proceeding. They signed a fee agreement, paid respondent's law firm $1,500.00, and made arrangements for the law firm to draw a monthly fee from their bank account. In the fee agreement respondent agreed to provide the following services: answering the complaint, amending the answer, making and amending affirmative defenses, answering amended complaints, communicating with opposing counsel, scheduling hearings, maintaining and reviewing the client file, monitoring the court docket, preparing for hearings, attending hearings (in person or by phone), conducting and updating legal research, defending against motions for summary judgment, and handling pretrial motion not related to discovery. The fee agreement excluded the following services: discovery, "trials," lawsuits by mortgage holders other than the first mortgage holder, transactional services, and claims of "affirmative" relief.

On February 21, 2012, a foreclosure hearing was held. Neither respondent nor anyone from his law firm appeared on the Roes' behalf. A default judgment was entered on February 22, 2012.

On June 8, 2012, the Roes filed a Motion for Reconsideration and to Reinstate the Loan prepared by respondent's law firm, listing the Roes as *pro se*, but providing the address for the law firm. On June 15, 2012, the court issued notice of the hearing on the Motion for Reconsideration, serving the Roes at the property address and respondent's law firm address in Florida. The hearing was held on June 26, 2012; no one appeared on the Roes' behalf.

On July 5, 2012, the judge signed the order denying the Motion for Reconsideration. On July 24, 2012, the Roes filed

a notice of appeal prepared by respondent's law firm. On July 31, 2012, the Roes filed a Motion to Stay Eviction Pending Appeal prepared by respondent's law firm. On each document, respondent's Florida address was listed below the Roes' names.

The Roes' home was sold in foreclosure. From February through July 2012, respondent continued to make monthly drafts of $750.00 from the Roes' bank account for attorney's fees.

### *Matter III*

On November 6, 2012, ODC served respondent with a Notice of Investigation in the Doe matter, advising of his obligation to respond within fifteen days pursuant to Rule 19, RLDE. No response was received. ODC sent respondent a reminder letter on December 21, 2012, pursuant to *In the Matter of Treacy,* 277 S.C. 514, 290 S.E.2d 240 (1982). On February 6, 2013, ODC served respondent with a subpoena for the Does' client file and a list of all of his South Carolina clients. Respondent did not provide the subpoenaed documents.

On March 18, 2013, ODC served respondent with a Notice of Investigation in the Roe matter, advising of his obligation to respond within fifteen days pursuant to Rule 19, RLDE. On the same day, ODC served respondent with a second subpoena again asking for the Does' client file, a list of all of his South Carolina clients, and for the Roes' client file. Respondent failed to respond to the Notices of Investigation, failed to respond to the subpoenas, and failed to appear for two interviews scheduled pursuant to Rule 19(c)(3), RLDE.

The Formal Charges alleged respondent failed to cooperate in ODC's investigation of the two above matters by failing to respond to the Notice of Investigations, by failing to respond to subpoenas, and by failing to appear for two interviews scheduled pursuant to Rule 19(c)(3), RLDE.

The Hearing Panel found respondent's conduct violated the following Rules of Professional Conduct, Rule 407, SCACR [3]:

---

**3.** The Rules of Professional Conduct, Rule 407, SCACR, are applicable as respondent's misconduct occurred in connection with matters pend-

Rule 1.1 (lawyer shall provide competent representation); Rule 1.2 (lawyer shall abide by client's decisions concerning objectives of representation); Rule 1.3 (lawyer shall act with diligence and promptness in representing client); Rule 1.4 (lawyer shall keep client reasonably informed about status of matter and promptly comply with reasonable requests for information; lawyer shall explain matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation); Rule 1.5 (lawyer shall not make agreement for, charge, or collect unreasonable fee or unreasonable amount for expenses); Rule 1.15(c) (lawyer shall deposit into client trust account unearned legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred); Rule 3.1 (lawyer shall not bring or defend proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous); Rule 3.5(b) (lawyer shall not communicate ex parte with judge during proceeding unless authorized to do so by law or court order); Rule 5.3 (lawyer who individually or together with other lawyers possesses comparable managerial authority in law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that non-lawyer employee's conduct is compatible with the professional obligations of the lawyer); Rule 5.5(a) (lawyer shall not practice law in jurisdiction in violation of the regulation of legal profession in jurisdiction or assist another in doing so); Rule 5.5(b) (lawyer not admitted in this jurisdiction shall not hold out to public or otherwise represent lawyer is admitted to practice in this jurisdiction); and Rule 8.1(b) (in connection with disciplinary matter, lawyer shall not knowingly fail to respond to a lawful demand for information from disciplinary authority).

### DISCUSSION

As noted above, since respondent failed to answer the Formal Charges, he is deemed to have admitted the allegations in the charges. Rule 24(a), RLDE. Further, since he

---

ing before tribunals in South Carolina. See Rule 8.5(b), RPC (addressing choice of law for disciplinary matters).

failed to appear for the Panel Hearing, respondent is deemed to have admitted the factual allegations and to have conceded the merits of any recommendations considered at the Panel Hearing. Rule 24(b), RLDE.

▮ Pursuant to Rule 3(b), RLDE, Rule 413, SCACR, the Commission on Lawyer Conduct (the Commission) has jurisdiction over all allegations that a lawyer has committed misconduct. "Lawyer" is defined as "a lawyer not admitted in this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction." Rule 2(q), RLDE. Accordingly, even though he is not admitted to practice law in South Carolina, respondent is subject to discipline in this state.

▮ The authority to discipline lawyers and the manner in which the discipline is imposed is a matter within the Court's discretion. *In the Matter of Van Son*, 403 S.C. 170, 742 S.E.2d 660 (2013). When the lawyer is in default the Court need only determine the appropriate sanction. *Id.*

▮ We find respondent's misconduct particularly egregious. Although not admitted to practice law in South Carolina, respondent nevertheless engaged in the practice of law in this state. He represented clients in South Carolina. He or his firm provided advice to clients and prepared and filed pleadings, some of which were frivolous, on behalf of his clients. Although he prepared and filed motions, respondent neglected to attend the motion hearings. Moreover, respondent charged and collected unreasonable fees from clients for the minimal work he did perform and then continued to collect fees from clients even after his representation ceased. When disciplinary charges were filed against him, respondent ignored the matter by failing to respond, participate in the investigative process, or appear for the hearing.

In considering the appropriate sanction, we find several aggravating factors applicable. First, respondent undertook the representation of vulnerable clients, individuals who had financial difficulties and faced the prospects of losing their homes to foreclosure. *In the Matter of Samaha*, 399 S.C. 2, 731 S.E.2d 277 (2012); *In the Matter of Dickey*, 395 S.C. 336, 718 S.E.2d 739 (2011). Second, respondent failed to cooperate in the disciplinary investigation and to appear for the hearing.

*In the Matter of Hall,* 333 S.C. 247, 251, 509 S.E.2d 266, 268 (1998) ("An attorney's failure to answer charges or appear to defend or explain alleged misconduct indicates an obvious disinterest in the practice of law. Such an attorney is likely to face the most severe sanctions because a central purpose of the disciplinary process is to protect the public from unscrupulous or indifferent lawyers."). Third, as recognized in the Panel Report, respondent received a public reprimand from the Supreme Court of Florida in 2003. By the reprimand, the Florida Supreme Court sanctioned respondent for failing to provide competent representation, failing to act with reasonable diligence and promptness in representing a client, and failing to explain a matter to the extent reasonably necessary to permit a client to make informed decisions regarding representation. Respondent has committed the same misconduct in the current matter.

If respondent were admitted to practice law in South Carolina, his conduct would warrant disbarment. Since he is not admitted in South Carolina, we find it appropriate to permanently debar him from seeking any form of admission to practice law in this state (including pro hac vice admission) without first obtaining an order from this Court allowing him to seek admission. We further order respondent to fully reimburse all fees and costs paid by the clients in this matter and to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission within thirty (30) days of the date of this opinion.

Should he wish to seek admission in the future, the burden of proof shall be on respondent to establish by clear and convincing evidence that he is of sufficient character and fitness. Under no circumstances shall respondent be eligible to seek admission until he has fully reimbursed his clients for all fees and costs paid in this matter and paid the costs of this proceeding.

**DISCIPLINE IMPOSED.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.