# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Mark Andrew Brunty, Respondent.

Appellate Case No. 2014-001840

Opinion No. 27503
Heard January 13, 2015 – Filed February 25, 2015

## DISBARRED

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina
C. Todd, Assistant Disciplinary Counsel, both of
Columbia, for Office of Disciplinary Counsel.

Mark Andrew Brunty, of Edgefield, *Pro se* Respondent.

**PER CURIAM:** Respondent failed to answer or appear in this attorney
disciplinary matter and was held in default.[1] Following a hearing, the Panel
recommended respondent be disbarred. We agree, disbar respondent, and order
him to pay the costs of this disciplinary proceeding,[2] to make restitution to the
clients identified in the attached appendix, to repay the Lawyers Fund for Client
Protection for any payments made on respondent's behalf, and to complete the
Legal Ethics and Practice Program, Ethics School, Trust Account School, and
Advertising School prior to seeking readmission to the South Carolina Bar.

---

[1] Respondent is presently serving a forty-six month federal sentence following his
plea to conspiracy to commit wire fraud. In addition to his active sentence,
respondent was ordered to pay $1,575,600 in restitution and placed on three years
supervised release following his incarceration.
[2] $1,891.32.

# PROCEDURAL HISTORY

Formal Charges were personally served on respondent on March 24, 2014. When he failed to answer, the Panel entered an order of default. By virtue of his default, respondent is deemed to have admitted the factual allegations made in the Formal Charges. Rule 24(a), Rules of Lawyer Disciplinary Enforcement (RLDE), Rule 413, SCACR. The Panel sent a copy of the order of default and an order to appear by certified mail and by first class mail to respondent at three addresses. The certified mail to all three addresses was returned, as were two of the three first class mailings. The Panel held a hearing on the Formal Charges on August 15, 2014. Respondent did not appear at that hearing. The Panel issued a report reciting the admitted facts, finding respondent violated seven subsections of Rule 7(a), RLDE, Rule 413, and that aggravating circumstances existed. The Panel recommended that respondent be disbarred with conditions. Neither the Office of Disciplinary Counsel (ODC) nor respondent has filed exceptions to this report.

Since respondent is in default, the sole question before the Court is the appropriate sanction. *In re Berger*, 408 S.C. 313, 759 S.E.2d 716 (2014). In determining the appropriate sanction, we take into consideration both respondent's failure to answer the Formal Charges, and his failure to appear at the August 2014 Panel hearing. *In re Hall*, 333 S.C. 247, 509 S.E.2d 266 (1998).

# FACTS/FINDINGS

The factual allegations, admitted by respondent, and the accompanying rules violations found by the Panel, are as follows:

## A. Matter 11-DE-L-380

Respondent represented a husband and wife in several legal matters related to the couple's business. During the course of representation, respondent engaged in a sexual relationship with the wife, in violation of the then current version of Rule 1.7(b), Rules of Professional Conduct (RPC), Rule 407, SCACR. Further, during the investigation of this matter, respondent testified under oath that he had not had sexual relations with any other client, client's spouse, or client's employee. This testimony was false as respondent was then engaged in a sexual relationship with the client who is the complainant in Matter 12-DE-L-1459, Item C *infra*.

Respondent's conduct in this matter violated Rules 1.7(b), 8.1(a), 8.4(d), and 8.4(e), RPC, Rule 407.

**B. Matter 12-DE-L-0346**

Respondent represented the client property owner's association in a construction defect suit. Without the association's knowledge, respondent used a forged agreement to sell a portion of the association's interest in the suit to Incline Energy, LLC (IE) in exchange for $100,000 to fund the litigation. Respondent executed a separate document agreeing to hold the $100,000 in his trust account and to disburse it only for litigation purposes. In fact, he had the funds wired to his operating account and used it for his own purposes.

IE notified two attorneys involved in the construction defect litigation of the agreement, and respondent repaid IE in two transactions. When questioned by ODC, respondent made numerous misrepresentations, including that he repaid IE from his personal investment accounts. Respondent presented altered documents from a closed investment account to ODC to support his claim. In fact, the money came from two clients who were ultimately repaid with funds respondent misappropriated from others. ODC subpoenaed respondent's trust account records, and in response respondent provided some photocopied bank statements from Conway National Bank (CNB) and a few incomprehensible ledgers. He failed to inform ODC of accounts at South Carolina Bank & Trust (SCB&T).

ODC compared statements obtained from CNB with those provided by respondent. Among other issues, the examination revealed altered pages, memo lines, and wire amounts; that overdraft fees had been obscured; that NSF items had not been reported to ODC; and that non-client payees and personal expenses had been paid both by checks and debits out of this trust account. While respondent attended one interview with ODC, he ceased cooperating after the altered bank records were discovered.

Respondent's conduct in this matter violated Rules 1.15, 8.1(a), 8.1(b), 8.4(b), 8.4(c), 8.4(d), and Rule 8.4(e), RPC, and Rule 417, SCACR.

**C. Matter 12-DE-L-1459**

Complainant hired respondent to bring a mortgage fraud suit against a lender, and paid him $15,000 towards his $25,000 fee. They subsequently developed a sexual

relationship, and respondent told the complainant she need not pay the fee balance. Respondent failed to pursue the fraud case in any meaningful way.

Complainant also gave respondent $22,000, and he agreed to manage an inactive business for her. Approximately $5,000 was used for legitimate business expenses, but respondent has refused to either return the remaining funds or provide complainant with an accounting.

Respondent violated Rules 1.3, 1.4, 1.5, 1.7, 1.8(m), 1.15, 1.16, 7.1, 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(e), RPC, Rule 407, in his handling of this matter.

## D. Matter 12-DE-L-1470

Respondent, or someone acting on his behalf, contacted complainant and informed him his mortgage lender had violated several regulations and therefore complainant's mortgage could be adjusted. This telephone call was an impermissible direct solicitation. Following an in-person meeting, respondent accepted $5,000 to represent complainant in seeking a mortgage reduction, promising a full refund if he were unsuccessful and a half refund if he were successful.

Respondent did not pursue relief on behalf of complainant, but falsely represented the situation when complainant sought updates. Following respondent's interim suspension, complainant contacted respondent who assured him his case was progressing well, and that another attorney would complete the case. Complainant asked for a refund, but has received no further communication from respondent. Respondent did not cooperate with ODC in this matter.

Respondent's conduct in this matter violated Rules 1.3, 1.4, 1.5, 1.16(d), 3.2, 7.3(a), 8.1(b), and 8.4(d), RPC, Rule 407.

## E. Matter 12-DE-L-1492

Respondent impermissibly solicited mortgage-related business from complainant's daughter. When complainant contacted respondent, complainant was told he would receive title to his property and a refund of all his mortgage payments. Complainant paid respondent $5,000. Respondent performed no work on complainant's behalf, but misrepresented that the case was "about finished."

Respondent was suspended shortly thereafter, and did not cooperate in ODC's investigation.

Respondent violated Rules 1.3, 1.4, 1.5, 1.16(d), 3.2, 7.1, 7.3, 8.1(b), 8.4(d), and 8.4(e), RPC, Rule 407, in this matter.

## F.  Matter 12-DE-L-1602

Respondent agreed to negotiate two condominium short sales for complainant. Respondent asked for and received $20,000 to use in negotiating with one of the lenders, but did not safeguard that money, and did not return it to complainant who was dissatisfied with the lack of progress.  Both condominiums are subject to foreclosure actions and complainant faces deficiency payments.  Respondent did not cooperate with ODC in this investigation.

Respondent violated Rule 1.3, 1.15, 1.16, 8.1(b), 8.4(d), and 8.4(e), RPC, Rule 407, in this matter.

## G.  Matter 12-DE-L-1644

Complainant and her husband hired respondent to deed back two timeshares. Respondent negotiated the couple's checks, but did not deliver or record the new timeshare deeds.  As a result of respondent's inaction, complainant and her husband incurred additional timeshare fees.  Respondent avoided complainant except for one phone call where he agreed to discuss a possible meeting, a meeting that never took place.  Respondent did not cooperate with ODC in the investigation of this matter.

By his conduct here, respondent violated Rules 1.3, 1.4, 1.6, 5.5, 8.1(b), and 8.4(e), RPC, Rule 407.

## H.  Matter 13-DE-L-0006

Complainant hired respondent for $2,000 to bring suit on complainant's behalf. Respondent failed to work diligently and to communicate adequately with the complainant.  Respondent represented to complainant that the suit had been filed and induced complainant to spend thousands of dollars on the nonexistent litigation.  Upon his suspension, respondent did not return the unearned fees to complainant, and did not surrender complainant's file to complainant or to the

individual appointed as the Attorney to Protect Client's Interests (ATP). Respondent did not cooperate in ODC's investigation.

Complainant filed a fee dispute and was awarded $2,000 by the Resolution of Fee Disputes Board. Respondent did not pay this award.

Respondent's conduct in this matter violated Rules 1.2, 1.3, 1.4, 1.5, 1.16(d), 8.1(b), 8.4(d), and 8.4(e), RPC, Rule 407 and the Lawyer's Oath, Rule 402(k)(3), SCACR.

## I. Matter 13-DE-L-0007

Complainants hired respondent to assist in the sale of their business to investors. In connection with the sale, respondent was entrusted with $210,000 from the investors to be used to pay the business's debts and federal tax liability of $25,000.

Respondent disbursed funds to settle the debts and assured complainants that the remaining funds were sufficient to satisfy the tax liability. Complainant received a number of IRS notices, and was told by respondent that he was working with the IRS. He eventually told complainants the federal tax liability could be settled for $15,000. In fact, respondent never made any effort to settle or pay the tax debt, and by the time respondent was placed on interim suspension, the tax liability had increased to $40,854.18. Respondent had no funds in trust for complainants, and did not cooperate with ODC's investigation.

By his conduct in this matter, respondent violated Rules 1.3, 1.15, 8.1(b), 8.4(d), and 8.4(e), RPC, Rule 407 and the Attorneys Oath, Rule 402(k)(3), SCACR.

## J. Matter 13-DE-L-0061

Complainant hired respondent to assist in litigation, and eventually instructed respondent to accept a settlement offer which would result in complainant's receipt of almost $54,000. Respondent rejected the offer, and did not inform complainant that his case was going to trial. At that trial, respondent represented that complainant chose not to be present. He presented no evidence and did not challenge the opposing party's evidence. Although the record was held open to allow respondent to brief a legal issue, no brief was ever submitted. Complainant's claim was unsuccessful.

Following respondent's interim suspension, complainant hired a different attorney to pursue the settlement offer. This attorney discovered that respondent had taken the claim to trial and lost. As a result, complainant received nothing. Respondent did not cooperate in the investigation of this matter.

Respondent's conduct in this matter violated Rules 1.1, 1.2, 1.3, 1.4, 3.3, 8.1(b), 8.4(d), and 8.4(e), RPC, Rule 407.

## K. Matter 13-DE-L-0075

Respondent and a business partner convinced complainants to invest in a scheme to purchase distressed promissory notes and real property which would be sold quickly for a significant property. The complainants were to receive 80% of the profits from each transaction while respondent and the associate were to receive 20%. After what they believed to be a successful first transaction, the complainants were persuaded to invest $600,000 for a distressed note that respondent represented could be resold quickly for a $150,000 profit, and to invest $100,000 to purchase two real estate parcels. Respondent presented forged, fabricated documents to complainants to demonstrate his authority to make these purchases, and complainants sent respondent $700,000 in four transactions. Respondent misappropriated the funds.

Following respondent's interim suspension, respondent showed the complainants fraudulent bank records purporting to show that $600,000 was held in an account. The complainants sued respondent, his business associate, and a corporate entity, and respondent was held in default. He did not cooperate with ODC in this matter.

Respondent was indicted by the federal government on four counts of mail fraud, a violation of 18 U.S.C. § 1343, for his conduct in this matter. Respondent subsequently pled guilty to one count of conspiracy to commit wire fraud.

Respondent's conduct in this matter violated Rules 1.8, 1.15, 1.16, 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(e), RPC, Rule 407.

## L. Matter 13-DE-L-0080

Complainant, a Florida attorney, introduced respondent to the complainants in Matter 13-DE-L-0075, Item K *supra*. Complainant decided to invest with respondent, and obtained the promised return on his first investment with

respondent. He later wired respondent $50,000 for a second investment. The second investment never took place, and respondent did not safeguard complainant's money. Further, respondent did not cooperate in ODC's investigation.

In this matter, respondent's conduct violated Rules 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(e), RPC, Rule 407.

## M. Matter 13-DE-L-0096

Respondent's representation of client over the span of two years was neither competent nor diligent, and the lack of diligence caused client financial harm. Respondent also misled client, and following respondent's suspension, two forged promissory notes were found in client's file, one representing client's alleged $50,000 debt to respondent and the other his alleged $50,000 debt to a third person. Respondent failed to cooperate with ODC's investigation.

By his conduct in this matter, respondent violated Rules 1.1, 1.3, 1.4, 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(e), RPC, Rule 407.

## N. Matter 13-DE-L-0326

Claimant was employed by respondent. After he left respondent's employ, his notary signature was forged on litigation loan documents by which a client was lent $10,000. The client, whose signature was also forged, was unaware of the loan and received none of the proceeds, but ultimately paid the loan company $13,000 to avoid costly litigation. Respondent did not cooperate in the investigation of this matter.

By his conduct in this matter, respondent violated Rules 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(e), RPC, Rule 407.

## O.  Matter 13-DE-L-0817

Client lent respondent $500,000 as a real estate investment in exchange for certain benefits.  After the loan was made, client learned that respondent had presented him with forged and fabricated documents, and that respondent lacked the authority to fulfill certain of the promised benefits.  Respondent repaid client only $90,000, and misrepresented the source of those funds.  Respondent did not cooperate in ODC's investigation.

Respondent's conduct in this matter violated Rules 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(e), RPC, Rule 407.

## P.  Matter 13-DE-L-1046

Respondent retained an unearned $500 payment.  He did not cooperate in this investigation.

Respondent violated Rules 1.16(d) and 8.1(b), RPC, Rule 407, in this matter.

## Q.  Out-of-State Loan Modification Matters

Respondent employed marketing companies to solicit out-of-state clients interested in home loan modifications or foreclosure avoidance.  Respondent, who was licensed only in South Carolina, failed to oversee the actions of these marketing companies, and employed a third party to process the loan modifications.  Upon respondent's interim suspension, this third party began working with a different South Carolina law firm.  Neither respondent nor this third party notified the loan modification clients of respondent's suspension, did not seek their consent to work with the new firm, and shared confidential client information with that firm.  Eventually the third party mailed a cryptic unsigned letter to respondent's out-of-state clients notifying them of respondent's suspension and giving them the ATP's contact information.  The third party surrendered many, but not all, of respondent's loan modification client files to the ATP.  Respondent did not cooperate in the investigation of these matters.

Respondent's conduct constituted the unauthorized practice of law in many of these foreign jurisdictions.  This is a violation of Rule 5.5, RPC, Rule 407.

The applicable rules of professional conduct are those of the jurisdictions where the clients and homes are located. Rule 8.5, RPC, Rule 407. For this reason, the individual client matters are grouped by jurisdiction.

### 1. Arkansas, Matter 13-DE-L-0337

A couple paid respondent $2,900 to assist in obtaining a modification of their already modified home loan. They did not receive adequate communications and could not obtain a status update.

Respondent's conduct in this matter violated the following Arkansas Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.16(d), and 8.1(b).

### 2. California, Matters 13-DE-L-1201, 13-DE-L-0135, 13-DE-L-0210, and 13-DE-L-0050

Client A paid $2,900 upfront for help with a loan modification matter. Client B paid $2,800 despite being eligible for free services and was eventually told to send the lender her documents directly. Client Couple C paid $2,900 and were informed the foreclosure on their home had been stopped. They subsequently learned the home had been sold at foreclosure. Client Couple D paid $2,900, but received neither diligent service nor adequate communications.

Respondent's conduct constituted the unauthorized practice of law in violation of § 6125 of the California Business and Professional Code, and Rule 1-300 of the California Rules of Professional Conduct. By charging and collecting an upfront fee, respondent violated California Civil Code § 2944.7. In addition, respondent's conduct violated these California Rules of Professional Conduct: 1-400, 3-110, 3-500, 3-700, 4-100, and 4-200.

### 3. Colorado, Matter 13-DE-L-0162

Client was told respondent could assist her only if she stopped paying her mortgage and instead paid respondent $2,900. After receiving client's payment, respondent did not work diligently on her behalf or do anything to assist in client's loan modification. When client called respondent's law firm directly for a status update, she received a voicemail response from respondent's employee directing her not to call his office. Following

respondent's interim suspension, the third party contacted client to inform her that respondent's firm was out of business. Client lost her home in foreclosure.

Respondent's conduct in this matter violated the following Colorado Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.15, 1.16(d), 5.3, and 8.1(b).

## 4. Connecticut, Matters 13-DE-L-0244, 13-DE-L-0992, and 13-DE-L-0563

Client Couple A paid respondent $2,900 to help them with their mortgage. They received confusing and conflicting emails from three different processors who identified themselves as employees of respondent's firm. Respondent did not diligently work to obtain a modification or otherwise earn the fee collected. After respondent was placed on interim suspension, one of the three processors emailed clients and said their file had been submitted to their lender. Later, clients were advised that respondent had transferred their file to another firm. Clients gave the successor firm permission to negotiate on their behalf, but did not receive satisfactory service. Clients later learned respondent had been suspended.

Client B paid respondent $2,900 to help her obtain a loan modification. Respondent did not provide Client B with diligent representation or adequate communication. The loan processors she thought were firm employees often provided her with conflicting information about the status of her matter. After respondent's interim suspension, the loan processors continued to tell her they were working on her file, but indicated they were with a successor law firm. When she refused to pay additional fees to the successor firm, any work being performed on her file ceased.

Client C hired respondent's firm to help her obtain a loan modification. She paid the firm $2,400 after a non-lawyer salesperson gave her legal advice and told her respondent's firm was very experienced. Sometimes she could not receive any response from her firm contacts, and at other times she received inconsistent and/or false information. Client C did not receive any discernable service from respondent or his firm and ultimately obtained a loan modification on her own.

Respondent's conduct in these matters violated the following portions of the

Connecticut Rules of Professional Conduct: 1.1, 1.3, 1.4, 1.5, 1.6, 1.15, 1.16(d), 5.3, 7.1, 8.1(2), and 8.4(d).

## 5. Florida, Matter 12-DE-L-1419

Client responded to an internet advertisement and was contacted by a salesperson associated with respondent's firm. Client paid the firm $2,900, but did not receive the promised modification. Client communicated only with employees of the marketing company and the loan modification processing companies. Respondent did nothing on client's behalf.

Under Florida law, it is generally impermissible to charge or collect a fee for foreclosure prevention services prior to completion of all of the services. Florida Statutes § 501.1377. Respondent did not fall within any exception to that general rule. Florida Statutes § 501.212; § 501.1377. Respondent's collection of an up-front fee violated Rule 4-1.5 of the Florida Rules of Professional Conduct, and he also violated Rules 4-1.3, 4-1.4, 4-5.3, 4-7.13, and 4-8.1(b).

## 6. Georgia, Matter 13-DE-L-0273

Client hired respondent after a salesperson guaranteed a loan modification and convinced client to sell his truck to pay the $2,900 fee. No progress was made on Client's file, and respondent failed to notify him of his suspension.

Respondent's conduct in this matter violated the following portions of the Georgia Rules of Professional Conduct: 1.3, 1.4, 1.5, 5.3, 1.16(d), 7.1, and 8.1(b).

## 7. Idaho, Matter 13-DE-L-0256

Client hired respondent to help him obtain a loan modification and agreed to pay half of the $2,900 fee up front and the second half after his loan was modified. However, client's credit card was charged with both payments before any work was completed. Respondent did not provide client with adequate communication or diligent representation.

Respondent's conduct in this matter violated Rules 1.3, 1.4, 1.5, 1.15, 1.16(d), 5.3, 8.1(b), and 8.4 of the Idaho Rules of Professional Conduct.

**8. Illinois, Matters 13-DE-L-0051 and 13-DE-L-0053**

Client A hired respondent after a salesperson convinced him his home could be saved from foreclosure and his mortgage debt reduced. Client was specifically told the firm could practice law in his home state of Illinois as well as Oklahoma, where his lender was located. He was instructed to stop paying his mortgage and to use that money to pay respondent $2,900. After several months, client requested a refund. By this point in time, respondent was on interim suspension. Client did not receive a refund and his file was not surrendered to the ATP.

Client Couple B paid respondent's firm $2,900 for loan modification assistance. A non-lawyer associated with the firm instructed the couple not to make further mortgage payments. Respondent failed to provide competent or diligent service and failed to adequately communicate. After respondent was placed on interim suspension, non-lawyers associated with respondent shared clients' confidential information with another South Carolina law firm without the couple's consent.

Respondent's conduct in these matters violated Rule 5.5 of the Illinois Rules of Professional Conduct, which prohibits lawyers from assisting another person in the unauthorized practice of law and prohibits lawyers not admitted in Illinois from holding themselves out as admitted in the jurisdiction. Respondent's conduct also violated the following additional portions of the Illinois Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.6, 1.16(d), 5.3, 7.1, 8.1(b), and 8.4.

**9. Kentucky, Matters 13-DE-L-0008 and 13-DE-L-0034**

Client A agreed to pay respondent $2,900 after a salesperson called respondent a loan modification specialist and made unrealistic promises. Client A did not receive adequate communication and when she was updated, she was given false information about the status of her loan modification. Respondent did not provide her with diligent service or the level of service she had been promised. For example, client was promised the firm would have a court-ordered mediation cancelled, but when it was not cancelled, she had to attend alone. Neither respondent nor the non-lawyers associated with his firm timely informed client of his interim

suspension. The third party charged Client A's final $725 credit card payment to a different firm without her knowledge or consent. Client A attended a foreclosure hearing by herself. When the third party surrendered Client A's file, it contained no evidence of work performed on her behalf.

Client Couple B were persuaded to hire respondent's firm after a salesperson promised them the attorney fee would be held in trust and that their mortgage payment would be reduced. They were advised to stop making payments as the firm tried to negotiate a modification. After Client Couple B paid the $2,900 attorney's fee, communication ceased. Respondent did not diligently work on the couple's matter and did not surrender their file upon his suspension.

Respondent's conduct in these matters violated the following portions of the Kentucky Supreme Court Rules 3.130: -1.3, -1.4, -1.5, -1.6, -1.16(d), -5.3, -7.15, -8.1, and -8.4.

## 10. Maine, Matter 13-DE-L-0226

Client and his wife paid respondent's firm $3,500 to help lower their mortgage payments. They completed several packets of forms the firm provided, but none were submitted to the lienholders. They learned the firm was closed more than a month after respondent's suspension.

Respondent's conduct in this matter violated the following portions of the Maine Rules of Professional Conduct: 1.3, 1.5, 1.16(d), 5.3, and 8.1(b).

## 11. New Hampshire, Matter 13-DE-L-0152

Client paid respondent's firm $3,495 following a high-pressure sales pitch. Client experienced difficulty reaching anyone and never had a consistent firm contact. He never received the services or results he was promised.

Respondent's conduct in this matter violated the following portions of the New Hampshire Rules of Professional Conduct: 1.3, 1.4, 1.16(d), 5.3, and 8.1(b).

## 12. New Jersey, Matter 13-DE-L-1028

Client hired respondent to help him with a loan modification and made one payment of $967 prior to respondent's suspension. Respondent had not earned the fee and did not issue client a refund.

Respondent's conduct in this matter violated the following portions of the New Jersey Rules of Professional Conduct: 1.16(d) and 8.1(b).

### 13. Nevada, Matter 13-DE-L-0052

Clients paid respondent $2,900 to help them with a loan modification after a non-lawyer salesperson gave them false and misleading information about respondent and his firm. Respondent did not provide diligent representation or adequate communication.

Respondent's conduct in this matter violated the following portions of the Nevada Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.16(d), 5.3, 7.1, 8.1(b), and 8.4(c).

### 14. New York, Matter 13-DE-L-0566

Client paid respondent $2,900 after a salesperson promised her specific results. Respondent did not diligently represent client and did not adequately communicate with her. He did not earn the fee and failed to surrender the unearned fee or client's file upon his suspension.

By collecting money to represent client in this matter, respondent engaged in the practice of law in violation of Section 484 of the New York Judiciary Law and Rule 5.5 of the New York Rules of Professional Conduct. Respondent's conduct also violated the following portions of the New York Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.15, 1.16(e), 5.3, and 8.4(c).

### 15. North Carolina, Matter 13-DE-L-0227

Clients paid respondent $2,495 to help them obtain a loan modification.

By offering to provide loan modification services in North Carolina, respondent engaged in the unauthorized practice of law in violation of N.C. Gen. Stat. § 84-4 and Rule 5.5 of the North Carolina Rules of Professional Conduct. Further, because he was not licensed to practice law in North

Carolina and accepted an upfront fee, respondent violated N.C. Gen. Stat. § 14-424.  Respondent's conduct also violated the following portions of the North Carolina Rules of Professional Conduct: 1.3, 1.4, 1.16(d), 5.3, and 8.1(b).

## 16.  Pennsylvania, Matters 13-DE-L-0182, 13-DE-L-0475, 13-DE-L-0081, and 13-DE-L-0211

Client A paid respondent $2,900 to help her obtain a lower mortgage payment.  Respondent did not diligently represent her or provide her with adequate communication.  After respondent's suspension, information from her file was shared with individuals associated with another South Carolina law firm without her consent.

Client B tried to obtain a loan modification under the Making Home Affordable Modification Program, but she was ineligible.  She then communicated with a salesperson associated with respondent, who assured her that she was eligible for the program and that her lender was misleading her.  After the salesperson made this claim and made other promises, client hired the firm and paid respondent $2,900.  Respondent did not diligently represent client or adequately communicate with her.  After respondent's suspension, information from her file was shared with individuals associated with another South Carolina law firm which solicited her business by email and phone.

Client Couple C paid respondent $3,000 to help them obtain a loan modification.  After paying the fee and submitting the paperwork, the couple received no communication and no progress was made.

A foreclosure sale was already scheduled on Client D's home.  He received numerous phone calls from salespeople associated with respondent's firm, who falsely reported that the firm had Pennsylvania bar members on staff.  Client hired respondent and paid $2,000.  When Client D received the fee agreement, he noticed the terms and conditions were different from those the salesperson described.  Client requested a refund, but did not receive one.

Respondent's conduct in these matters violated the following portions of the Pennsylvania Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.6, 1.16(d), 5.3, 7.1, 8.1(b), and 8.4(c).

## 17. Tennessee, Matters 13-DE-L-0297, 13-DE-L-0049, and 13-DE-L-0183

Client A paid respondent $2,200 to help him with his home loan. After receiving no services, he sought a refund but received no response.

Client B paid respondent $2,900 to help her with a loan modification after a salesperson identified herself as a firm employee and gave her false and misleading information about the firm. Respondent performed no work on client's behalf and never contacted her lender.

Client Couple C paid respondent $2,800 to help them obtain a loan modification after their own attempts were unsuccessful. They were repeatedly asked to submit documents they had already submitted and experienced a lack of responsiveness from firm contacts.

Respondent's conduct in these matters violated the following portions of the Tennessee Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.16(d), 5.3, 7.1, 8.1(b), 8.4(a), and 8.4(c).

## 18. Texas, Matters 13-DE-L-0054, 13-DE-L-1156, 13-DE-L-0215, and 13-DE-L-0062

Client A paid respondent $1,300 after a salesperson promised him the firm could obtain specific loan modification terms for him. Client submitted the requested paperwork, but it was returned to him with instructions to mail it to his lender. He then received a phone call advising him that he would have to pursue the matter on his own. Client's phone calls and emails to the firm went unanswered. After filing a complaint with the Better Business Bureau, client received a call from the firm offering to represent him for an additional payment of $1,600. The caller guaranteed favorable results, while noting that such a guarantee is illegal. Client made the additional payment and again communication ceased.

Client Couple B hired respondent to help them obtain a loan modification. They were advised by their non-lawyer firm contact to stop paying their mortgage even after their income increased significantly. Shortly after clients paid the entire $2,900 fee, their firm contacts stopped communicating

with them. Thereafter, the lender assessed a large amount of fees for late payments and began foreclosure proceedings.

Client Couple C paid $2,900 after receiving legal advice and misleading information from a firm salesperson. They were unable to speak with respondent. They were told their modification had been worked out but never received any paperwork.

Client D hired respondent to help her obtain a loan modification, agreeing to pay the firm's $2,900 fee in four $750 [sic] installments. Shortly after her first payment to respondent, client's lender offered to modify her loan if she made certain payments over three months. She forwarded the lender's offer to her firm contact, but was instructed not to make payments or acknowledge the offer as the firm could negotiate a better interest rate. Respondent was then suspended, and her firm contact told Client D to make the payments the lender offered. Her file and personal information were then shared with another firm without her knowledge or consent.

Respondent's conduct in these matters violated the following portions of the Texas Rules of Professional Conduct: 1.01, 1.04, 1.05, 1.15, 5.03, 5.05, 7.02, 8.01(b), and 8.04(a)(3).

## 19. Virginia, Matter 13-DE-L-1191

Client hired respondent after a salesperson emailed her false and misleading information about respondent and his services. After paying $2,900 and repeatedly submitting paperwork, client questioned the firm's conduct. The firm contacts stopped communicating with her.

Respondent's conduct in this matter violated Virginia Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.16(d), 5.3, 7.1, 8.1(c), and 8.4(c).

## 20. Washington, Matters 13-DE-L-0413, 13-DE-L-0314, 13-DE-L-0370, and 13-DE-L-0433

Client A paid respondent $2,900 but did not receive the services she was promised. Respondent did not surrender her file upon his suspension, but the loan modification processing company forwarded the electronic file they maintained to the ATP.

Client B paid respondent $2,900 after a salesperson's statements gave him an unreasonable expectation of what the firm could accomplish for him. Client stopped making mortgage payments per his firm contact's instructions. Respondent was suspended approximately one week after client's final payment, and did not provide any meaningful representation. After respondent's suspension, confidential information from client's file was shared with another law firm without client's knowledge or consent.

A salesperson gave Client C misleading information about the services respondent could provide and persuaded her to divert funds earmarked for her mortgage payments to pay the firm. Soon after she paid the $2,900 fee, all communication with the firm ceased. Respondent provided no meaningful representation to client and she lost her home in foreclosure.

Client Couple D decided against hiring respondent's firm, but relented after the salesperson continued calling them and would not take no for an answer. They paid $1,000 toward the fee before signing a fee agreement. They then changed their minds and requested a refund, but did not receive one.

Respondent's conduct violated the following portions of the Washington State Rules of Professional Conduct: 1.3, 1.4, 1.5, 1.6, 1.16(d), 5.3, 7.1, 8.1(b), and 8.4(c).

## SANCTION

The authority to discipline lawyers and the manner in which discipline is imposed is a matter within the Court's discretion. *In re Jardine*, 410 S.C. 369, 764 S.E.2d 924 (2014) (internal citation omitted). When the lawyer is in default, the sole question before the Court is that of the appropriate sanction. *Id.* In determining the sanction, the Court will consider the respondent's failure to cooperate with ODC's investigation, his false statements to ODC, and his failure to appear at the disciplinary hearing. *Id.*

The magnitude of respondent's misconduct mandates disbarment. The Panel found respondent was subject to discipline pursuant to Rules 7(a)(1), 7(a)(2), 7(a)(3), 7(a)(4), 7(a)(5), 7(a)(6), and 7(a)(10), RLDE, Rule 413. We agree with the Panel's findings and adopt its recommendations as to additional sanctions which are warranted here. Prior to seeking reinstatement, respondent must pay the costs of

this disciplinary proceeding, make restitution to the fortynine clients identified in the attached list, repay the Lawyers Fund for Client Protection for any payments made on respondent's behalf, and complete the Legal Ethics and Practice Program, Ethics School, Trust Account School, and Advertising School.

## CONCLUSION

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**

## APPENDIX

1. $32,000 to the complainant in Matter 12-DE-L-1459;

2. $5,000 to the complainant in Matter 12-DE-L-1470;

3. $5,000 to the client in Matter 12-DE-L-1492;

4. $20,000 to the complainant in Matter 12-DE-L-1602;

5. $2,000 to the complainant in Matter 13-DE-L-0006;

6. $25,000 to the clients in Matter 13-DE-L-0007;

7. $700,000 to the complainants in Matter 13-DE-L-0075;

8. $50,000 to the complainant in Matter 13-DE-L-0080;

9. $50,000 to the third person in Matter 13-DE-L-0096;

10. $10,000 to the client in Matter 13-DE-L-0326;

11. $410,000 to the investor in Matter 13-DE-L-0817;

12. $500 to the client in Matter 13-DE-L-1046;

13. $2,900 to Arkansas Client Couple in Matter 13-DE-L-0337;

14. $2,900 to California Client A;

15. $2,800 to California Client B;

16. $2,900 to California Client Mr. C;

17. $2,900 to California Client Couple D;

18. $2,900 to Colorado Client;

19. $2,900 to Connecticut Client Couple A;

20. $2,900 to Connecticut Client B;

21. $2,400 to Connecticut Client C;

22. $2,900 to Florida Client;

23. $2,900 to Georgia Client;

24. $2,900 to Idaho Client;

25. $2,900 to Illinois Client A;

26. $2,900 to Illinois Client Couple B;

27. $2,175 to Kentucky Client A;

28. $2,900 to Kentucky Client Couple B;

29. $3,500 to Maine Client;

30. $3,495 to New Hampshire Client;

31. $967 to New Jersey Client;

32. $2,900 to Nevada Client Couple;

33. $2,900 to New York Client;

34. $2,495 to North Carolina Client Couple;

35. $2,900 to Pennsylvania Client A;

36. $2,900 to Pennsylvania Client B;

37. $3,000 to Pennsylvania Client Couple C;

38. $2,000 to Pennsylvania Client D;

39. $2,200 to Tennessee Client A;

40. $2,900 to Tennessee Client B;

41. $2,800 to Tennessee Client Couple C;

42. $2,900 to Texas Client A;

43. $2,900 to Texas Client Couple B;

44. $2,900 to Texas Client Couple C;

45. $2,900 to Texas Client D;

46. $2,900 to Virginia Client;

47. $2,900 to Washington Client A;

48. $2,900 to Washington Client B;

49. $2,900 to Washington Client C; and

50. $1,000 to Washington Client Couple D.