# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Steven Robert Lapham, Respondent.

Appellate Case No. 2014-002762

---

Opinion No. 27533
Heard May 7, 2015 – Filed June 17, 2015

---

## DISBARRED

---

Lesley M. Coggiola, Disciplinary Counsel and Julie K. Martino, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Steven Robert Lapham, of Anderson, *pro se*.

---

**PER CURIAM:** The Office of Disciplinary Counsel (ODC) filed formal charges against Steven R. Lapham (Respondent) relating to fourteen separate matters, including, *inter alia*, engaging in the unauthorized practice of law, failure to cooperate with ODC, failure to cooperate with the Attorney to Protect Clients' Interests (ATP), and failure to communicate with his clients. Following a hearing, a panel of the Commission on Lawyer Conduct (the Panel) recommended disbarment.

We disbar Respondent, order him to make the restitution outlined in this opinion, to pay the costs of the proceedings, and to reimburse the Lawyers' Fund for Client Protection. In addition to the other requirements of 33 of the Rule for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules, we require him to complete the Legal Ethics and Practice Program Ethics School, the Trust Account School, and the Advertising

School prior to seeking readmission to the South Carolina Bar. As an additional condition of any readmission, he must enter into an agreement with a Law Office Management Advisor approved by the Commission on Lawyer Conduct.

## FACTUAL/PROCEDURAL BACKGROUND

ODC filed formal charges against Respondent on April 8, 2014. Respondent failed to file an answer and the Panel held him in default. The allegations against Respondent, which are deemed admitted due to his default, are as follows:

## Matter 12-DE-L-0636

Clients paid a company which fraudulently promised to help them secure a government grant for repairs to their home and thereafter hired Respondent to help them obtain a refund. Respondent told the clients the company was running a scam, and promised he would get their money back.

Respondent charged the clients $2,000.00, even though he knew the operation was a scam. Respondent wrote three letters to the company requesting a refund, and had only two telephone conversations with the clients. Although Respondent suggested a meeting with the clients to discuss their situation, he never followed up with them and never returned their documents. The clients continued to attempt to contact Respondent, but to no avail.

Respondent did not respond to the notice of investigation from ODC until he was subpoenaed to appear for an on-the-record interview. He appeared for the interview on September 20, 2012. One of the clients also filed a complaint with the Resolution of Fee Disputes Board of the South Carolina Bar. Respondent did not cooperate with the Board, which ultimately found Respondent should refund $2,000.00 to the clients. Respondent did not refund the money. A certificate of non-compliance was filed in Anderson County on December 3, 2012.

Respondent was subpoenaed to appear for a second interview on January 10, 2013. Respondent signed the certificate of service indicating he received notice of the scheduled interview. Respondent failed to appear or contact ODC about his absence until January 11, 2013. At that time, he indicated he would provide ODC with the documents previously requested. He further assured counsel for ODC that he would provide responses to notices of investigation in several other cases. Respondent never provided the requested information. Respondent was placed on

interim suspension on January 15, 2013, and James Jolly, Jr. was appointed as ATP. *In re Lapham*, 402 S.C. 223, 742 S.E.2d 1 (2013). Respondent was again subpoenaed to appear for an interview on March 19, 2013, but failed to appear.

## Matter 12-DE-L-1112

A certificate of non-compliance was submitted to ODC by the Resolution of Fee Disputes Board for Respondent's failure to pay an award of $800.00 to one of Respondent's clients. Respondent failed to respond to the notice of investigation and failed to appear for an interview pursuant to Rule 19(c)(3), RLDE.

## Matter 12-DE-L-1213

Client hired Respondent to represent her in a divorce. On at least two occasions, Respondent showed up late at night, unannounced at her home. One of these times was the evening before the divorce hearing. He was not prepared to try the case the next day and pleaded with her to settle. Respondent refused to negotiate with the guardian *ad litem* and was unprepared when the hearing went forward.

After the client requested her file several times from Respondent, he informed her the order had not yet been signed and he was still working on the case. Respondent failed to keep her informed about the status of the case and failed to promptly comply with her requests for information. The client went to another attorney and asked him to retrieve the file from Respondent. The new attorney looked into the matter, and found the order had been signed two weeks before.

## Matter 12-DE-L-1219

Respondent was appointed to represent a client on several criminal charges. Respondent did not show up for a hearing; when the client called Respondent the next day, Respondent hung up on him. Respondent did not respond to the client's requests for discovery materials, nor did he answer the client's telephone calls.

## Matter 12-DE-L-1261

Client, who was in jail, was looking for a new attorney after firing his previous one. The client's mother saw Respondent's business card in the detention center and arranged for Respondent to meet with her son. The client told his mother not to retain Respondent without his approval.

Respondent met with the client at the detention center and quoted him a fee of $5,000.00. Respondent advised the client to pursue a plea deal because of his prior record. The client told Respondent he would be in touch, but ultimately decided not to hire Respondent.

Before the client could speak to his mother, Respondent called her and said her son wanted to retain him and asked for $700.00 as an initial fee.[1] The client's mother gave Respondent $700.00 but did not sign a fee agreement.

When the client learned about Respondent's behavior, he immediately told his mother to call and request a refund. Respondent went to see the client at the detention center, and the client insisted Respondent refund the money because he had never agreed to hire Respondent. However, Respondent refused to refund the money because he claimed to have earned it by visiting the client at the detention center twice. When the mother told Respondent she would report him to the Bar, Respondent refunded her $300.00, but insisted on keeping the other $400.00.

## Matter 13-DE-L-0076

Client's mother hired Respondent to pursue a contempt action against the father of her daughter's children for failure to pay child support. The client's mother asked to pay in installments and Respondent agreed. She made four payments totaling $1,850.00.

Shortly after hiring Respondent, the client's mother began e-mailing and calling Respondent for information about the case. Respondent spoke to her once on the phone, but generally avoided her calls and did not respond to her e-mails. In December 2012, Respondent told the client he would file her case later that month. On December 31, 2012, Respondent told the client's mother he had been too busy to file the case, but that he would file it on January 2, 2013. On January 2, 2013, Respondent told client's mother he could not file the case that day, but that he would file it later that week. The client's mother called and e-mailed him several times thereafter with no response.

On January 17, 2013, Respondent signed for a certified letter sent by the client's mother informing him he was fired and requesting a refund of her money. The client's mother later discovered Respondent had been suspended from practice

---

[1] Respondent told client's mother he needed the $700.00 to get his truck fixed.

on January 15, 2013.  Respondent did not inform her that he was suspended or that she needed to find new counsel.  Respondent never refunded any of her money and did not provide an accounting to her.

## Matter 13-DE-L-0171

Client hired Respondent to represent him on several criminal charges and agreed to a fee of $5,000.00.  The client made payments every week, eventually paying Respondent a total of $2,200.00 toward this total.  On February 8, 2013, Respondent went to the client's home and collected $100.00 as part of the payment plan.  The following day, the client received a letter from the ATP advising him that Respondent had been suspended on January 15, 2013.

## Matter 13-DE-L-0172

Client hired Respondent to represent him on a charge of criminal domestic violence.  Respondent went to the client's home to discuss the case and subsequently agreed to represent him for $3,000.00.  The client paid Respondent in full.

When the client was scheduled to appear in court for a first appearance, he called Respondent to plan where to meet before the hearing.  Respondent misrepresented to the client he had taken care of it, and no one needed to appear for the hearing.  The client received a letter from the court regarding his "no show" at the hearing, and subsequently obtained new counsel.  The client never heard from Respondent again, and never received a refund.

## Matter 13-DE-L-0202

Respondent was suspended from the practice of law on January 15, 2013.  Early in February 2013, after a case had been heard and the final order was being circulated, opposing counsel in the case e-mailed Respondent for his review of the order not realizing Respondent had been suspended.  Respondent nevertheless called opposing counsel on February 13, 2013 and stated he represented one of the parties and requested changes to the proposed order.

## Matter 13-DE-L-0207

Client hired Respondent for a custody matter and provided Respondent with documentation and affidavits.  Respondent informed him it was not a problem that the client did not have an address for the child's mother.

Respondent charged the client $1,500.00 and told him it would take six to eight weeks to get into court. Respondent explained it was a simple case and he foresaw no problems.

Throughout his representation, Respondent behaved unprofessionally in that he would not acknowledge his client in the courtroom, would not return his telephone calls, and did not send him copies of any paperwork. The client's case experienced significant delays due to Respondent's conduct, and as a result the client's daughter could not start school on time. The client eventually retained another attorney to assist him in the matter.

## Matter 13-DE-L-0214

In late 2012, a client hired Respondent to represent him on a driving under the influence (DUI) charge. Respondent quoted a fee of $2,500.00; the client paid Respondent $500.00, and agreed to make monthly payments of $500.00 until he was paid in full. The client informed Respondent he had already paid $200.00 for an administrative hearing, which was scheduled for December 5, 2012. Respondent arrived late for this hearing.

The client received notice that a pre-trial conference was scheduled for January 29, 2013. Respondent and the client met January 10, 2013, and the client gave Respondent an additional $500.00 payment and the notice of the pre-trial conference. Respondent was suspended from the practice of law on January 15, 2013, but did not inform the client or the court. Respondent did not file a notice of appearance, and did not appear for the pre-trial conference. Respondent called the court and stated he could not be there but offered no reason why.

The client pled guilty to a lesser charge and was fined and received six points on his license. He did not want to plead guilty but felt it was his best option under the circumstances. Respondent gave the client no reason for not appearing at the hearing, and the client informed him he would file a complaint. The client also asked for a refund of the $1,000.00 he had paid, but Respondent never refunded any money.

## Matter 13-DE-L-0225

Although suspended from the practice of law on January 15, 2013, Respondent called the prosecuting attorney for the City of Anderson on February 19, 2013 and informed her he was suspended but he needed a continuance for a client, who had a hearing the next day. The attorney told Respondent he could not

request a continuance while suspended.  Respondent said he did not know what to do, and the attorney stated she could not advise him.  The attorney later learned Respondent had also contacted the Court Coordinator about a continuance in the same case.

## Matter 13-DE-L-0298

Client hired Respondent on September 3, 2012, to represent her in an uncontested divorce action.  She paid him a total of $850.00.  Respondent told her the divorce would be final on February 19, 2013, but she never heard from Respondent again.  The client later learned from the ATP that Respondent had been suspended from the practice of law.

## Matter 13-DE-L-307

Client met with Respondent to discuss representation on a DUI charge.  The client's girlfriend attended the interview because the client was not proficient in English.  Respondent asked for $400.00 up front and told the client he could pay $300.00 per month until he reached a total of $2,500.00.  Respondent told the client he would send $150.00 to Columbia to get a court date for a conditional license.  Respondent then told the client he had sent the money on time, but did not get a court date.  Respondent did not refund the $150.00.

The client later found a notice stating that a hearing had been scheduled for the conditional license but Respondent never told him about it and Respondent did not attend the hearing.  Respondent met the client and girlfriend at Spinx Gas Station, Zaxby's, a laundromat, and other places to collect the monthly payments.  They called Respondent regularly for updates on the case but Respondent always said he had not received any evidence yet.

A pre-trial conference was scheduled for December 3, 2012, but Respondent did not appear for the hearing.  Although he told the court that he had a scheduling conflict, he informed his client he had requested a jury trial.  Respondent eventually stopped communicating and would not return telephone messages.  Respondent did not inform his client that he had been suspended from the practice of law.  The client paid Respondent a total of $2,050.00.

## Additional Allegations

On April 19, 2013, ODC filed a rule to show cause as to why Respondent should not be held in criminal and civil contempt of this Court.

The grounds for the rule included Respondent's failure to cooperate with the ATP clients' interests, engaging in the unauthorized practice of law, and failure to file a Rule 30, RLDE, affidavit as required by the Court in its order placing him on interim suspension.

A hearing was held on September 4, 2013. A majority of the Court issued an order finding Respondent in criminal contempt for engaging in the unauthorized practice of law, and sentencing him to sixty days' imprisonment. *In re Lapham*, S.C. Sup. Ct. Order dated Sept. 4, 2013. The Court issued a subsequent order on September 19, 2013, finding Respondent in civil contempt for failure to comply with the requirements of Rule 30, RLDE, and for failure to cooperate with the ATP. *In re Lapham*, 405 S.C. 582, 748 S.E.2d 779 (2013). The Court ordered Respondent to fully cooperate with the ATP. The Court also ordered Respondent to file the Rule 30 affidavit within two weeks after the completion of his sentence. Respondent was released on October 4, 2013, and filed the Rule 30 affidavit on November 18, 2013, more than five weeks late.

In addition to filing the Rule 30 affidavit late, Respondent admitted in the affidavit that he had not complied with the requirements of Rule 30 in that he admitted that he had not notified his clients that he had been suspended, had not notified any opposing counsel, had not filed any motions to withdraw as counsel, had not refunded any fees to any clients, and had not surrendered his certificate to practice law. Respondent also stated in the affidavit that he had returned all of his files to the ATP.

At the end of 2013, the ATP was informed that someone had boxes of files belonging to Respondent. A woman then brought approximately twenty-one boxes of client files and other materials to the ATP's office. The ATP was relieved on August 22, 2014 and Respondent was required to repay the Lawyers' Fund $5,612.40 for the ATP's costs.

## Panel Hearing

Respondent appeared *pro se* at the hearing before the Panel on October 17, 2014, and was allowed to present evidence in mitigation. Respondent testified he has been homeless since 2009, when he sold the house he had shared with his former wife. Since then he has been living with other people, in his office, or in his car.[2] He stated he had no money to pay restitution and was on food stamps. He

---

[2] He stated at the time of the hearing he was living in his car in Anderson.

has been attempting to take the GMAT and get his Ph.D. in marketing to teach at the college level.[3]

Respondent testified his difficulty has always been financial and he has never engaged in drug use. He expressed his difficulty learning the practice of law—he could not find a job and had to go into practice on his own without really knowing what he was doing.

## Panel Report

The Panel noted the only mitigating factors presented by Respondent were his personal problems and his difficulty in practicing by himself, which the panel gave "very little weight." In aggravation, the Panel considered Respondent's failure to answer the formal charges, failure to cooperate with the disciplinary investigation, failure to cooperate with the ATP, and Respondent's dishonest and selfish motives in accepting clients' money after being suspended and when he did no work on their cases. The Panel accordingly recommended disbarment.

## LAW/ANALYSIS

This Court has the sole authority to discipline attorneys for misconduct. *In re Greene*, 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006). When the lawyer is in default, the sole question before the Court is that of the appropriate sanction. *In re Brunty*, 411 S.C. 434, 454, 769 S.E.2d 426, 436 (2015). This Court has recognized disbarment is not intended to be simply a punishment of the offending attorney, but serves to remove "an unfit person from the profession for the protection of the courts and the public." *In re Taylor*, 396 S.C. 627, 632, 723 S.E.2d 366, 368 (2012) (quoting *In re Burr,* 267 S.C. 419, 423, 228 S.E.2d 678, 680 (1976).

Based on the factual allegations, we find Respondent in violation of the following: Rules 1.1 (competence); 1.3 (diligence); 1.4 (communication); 1.5 (fees); 1.8(f) (compensation from another for client); 1.15 (safekeeping property); 1.16 (terminating representation); 3.2 (expediting litigation); 3.3 (candor to tribunal); 3.4 (fairness to opposing party and council); 4.1 (truthfulness in statements to others); 5.5 (unauthorized practice of law), 8.1(b) (failure to cooperate with disciplinary authority); 8.4(a) (violating rules of professional conduct); 8.4(d) (engaging in dishonesty or misrepresentation); 8.4(e) (conduct prejudicial to the administration of justice), of the South Carolina Rules of

---

[3] Respondent testified he has both an MBA and a master's degree in agriculture economics from Clemson University.

Professional Conduct, Rule 407, SCACR; and Rules 7(a)(1) (violation of rules of professional conduct); 7(a)(3) (willful violation of subpoena or Supreme Court order); 7(a)(5) (polluting the administration of justice and bringing disrepute to the profession); 7(a)(6) (violation of Oath of Office); 7(a)(10) (willful failure to comply with resolution of the Fee Disputes Board), RLDE.

Considering the numerous instances of misconduct combined with Respondent's deception of both his clients and ODC, we agree with the Panel's recommendation of disbarment. It is significant that Respondent failed to file an answer to the formal charges and has repeatedly failed to cooperate with ODC and the ATP in the investigation of these matters. *In re Hall*, 333 S.C. 247, 251, 509 S.E.2d 266, 268 (1998) ("An attorney's failure to answer charges or appear to defend or explain alleged misconduct indicates an obvious disinterest in the practice of law. Such an attorney is likely to face the most severe sanctions because a central purpose of the disciplinary process is to protect the public from unscrupulous and indifferent lawyers."). While we acknowledge Respondent represented himself at oral argument before this Court and expressed his desire to one day again practice law, he himself admitted it would not be for at least several years and acknowledged he would likely be disbarred; he simply requested that he one day be able to reapply for admission. We therefore find disbarment the appropriate sanction.

## CONCLUSION

Respondent is disbarred, and is ordered to pay $795.22 for the costs of this proceeding. He is ordered to pay restitution as follows: $2,000.00 to the clients in Matter 12-DE-L-0636; $400.00 to the client and his mother in Matter 12-DE-L-1261; $1,850.00 to the client's mother in Matter 13-DE-L-0076; $2,200.00 to the client in Matter 13-DE-L-0171; $3,000.00 to the client in Matter 13-DE-L-0172; $1,500.00 to the client in Matter 13-DE-L-0207; $1,000.00 to the client in Matter 13-DE-L-0214; $850.00 to the client in Matter 13-DE-L-0298; and $2,050.00 to the client in Matter 13-DE-L-0307. Respondent is also ordered to reimburse the Lawyers' Fund for Client Protection for all claims paid on his behalf. If Respondent is unable to pay the above costs, restitution, and reimbursement within thirty days of the date of this opinion, he shall enter into a payment plan with the Commission on Lawyer Conduct within sixty days of the date of this opinion.

Prior to filing any petition for readmission, Respondent must complete the Legal Ethics and Practice Program Ethics School, the Trust Account School, and the Advertising School. If readmitted, he must enter into an agreement with a Law

Office Management Advisor approved by the Commission on Lawyer Conduct. This agreement must be for at least two years from the date of his readmission and must include a thorough review of Respondent's office management practices and a quarterly report from the Advisor to the Commission. Respondent will be responsible for the payment of the Advisor's fee. Within fifteen days of the date of this opinion, Respondent shall file the affidavit required by Rule 30, RLDE, and return his certificate of admission to practice law to the Clerk of this Court.

**DISBARRED.**

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**