# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Mark E. Schnee, Respondent.

Appellate Case Nos. 2018-001473 and 2020-000850

Opinion No. 28007
Submitted January 22, 2021 – Filed February 10, 2021

## DISBARRED

John S. Nichols, Disciplinary Counsel, and Julie Kay
Martino, Assistant Disciplinary Counsel, for the Office of
Disciplinary Counsel.

Mark E. Schnee, pro se.

**PER CURIAM:** A set of formal charges was filed against Respondent Mark E.
Schnee in July 2017 alleging various instances of misconduct, including failing to
act competently and diligently on behalf of his clients, failing to communicate,
failing to make reasonable efforts to expedite litigation, making false statements of
fact to a tribunal, failing to refund unearned fees, and engaging in conduct
involving dishonesty or misrepresentation. On these charges, a panel of the
Commission on Lawyer Conduct (Hearing Panel) recommended a three-year
suspension. Three days after the Hearing Panel Report was filed with this Court,
the Office of Disciplinary Counsel (ODC) revealed that additional complaints had
been filed against Respondent alleging similar conduct and asking that the 2018
matter be stayed pending the resolution of the new complaints. The Court agreed
to hold the matter in abeyance. Additional formal charges were filed in March
2019, and the second Panel Report, which recommended disbarment, was issued in

June 2020.  The Court thereafter consolidated the matters for the purposes of consideration.  Neither party has filed exceptions to either Panel Report.  We disbar Respondent.[1]

**I.**

The first set of Formal Charges involved five complaints, which are summarized below.  In his Answer, Respondent admitted the factual allegations and acknowledged the findings of misconduct as set forth by ODC.

**Matter A**:

In April 2010, Respondent was appointed to represent Client A in her post-conviction relief (PCR) action following her guilty but mentally ill *Alford* plea to several criminal charges.  Respondent failed to meet with Client A until five days before the PCR hearing—ten months after being appointed.  Upon Respondent's request at the hearing, a continuance was granted for Respondent to seek a medical evaluation of Client A.  Respondent failed to prepare an order for the PCR court's signature and failed to follow-up or communicate with his client for nineteen months.  Client A filed a complaint with ODC.

After inquiry by ODC, Respondent prepared the order, which was signed by Judge Manning in December 2012; however, Respondent failed to timely forward the order to the Department of Mental Health (DMH).  During a January 2013 status conference on Client A's PCR action, Respondent lied to Judge Cooper about having submitted the order to DMH and claimed that he had made "numerous telephone calls" to find out when the evaluation would be scheduled.  In response, Judge Cooper signed an expedited order and called DMH to inquire about why no action had been taken on the previous order.  DMH informed Judge Cooper that no order had been received and there had been no activity in Client A's case since 2007.  Judge Cooper thereafter filed a complaint with ODC.

At the June 2013 PCR hearing, Respondent again requested a continuance. When it was denied, Respondent was unprepared to move forward.  It also came to light during the hearing that Respondent failed to explain the proceeding to his client.

---

[1] Respondent failed to answer the second set of formal charges or appear at the second Panel hearing, either in person or through counsel, and he failed to file any exceptions to either Panel Report.  Accordingly, we decline to hold oral argument in this matter.

Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (diligence); Rule 1.4 (communication); Rule 3.2 (reasonable efforts to expedite litigation); Rule 3.3 (knowingly making a false statement of fact to a tribunal); Rule 8.4(d) (engaging in conduct involving dishonesty); Rule 8.4(e) (engaging in conduct prejudicial to the administration of justice).

**Matter B**:

Respondent failed to communicate with Client B about the status of his case and the strategic reason he decided not to pursue a motion for reconsideration of sentence. Specifically, Client B pled guilty to first-degree burglary and received a sentence that was five years below the mandatory minimum sentence. Respondent was concerned that the motion would have exposed his client to an additional five years of incarceration. However, Respondent failed to explain to his client why pursuing the motion was not in his best interest. This conduct violated Rule 1.4 (communication).

**Matter C**:

Respondent was appointed to represent Client C on several criminal charges. Client C was convicted and sentenced to life without parole in April 2011. Respondent filed a motion for reconsideration the day of sentencing but failed to follow up for over three years. Eventually, Client C filed a PCR action, which was dismissed without prejudice in March 2015 because the motion for reconsideration of sentence was still pending. During this time, Respondent also failed to respond to Client C's request for his case file.

Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (diligence); Rule 1.4 (communication); Rule 3.2 (reasonable efforts to expedite litigation); 8.4 (conduct prejudicial to the administration of justice).

**Matter D**:

Client D retained Respondent to represent him on appeal. The agreed-upon fee was $5,000, of which Client D paid Respondent $2,500 up-front and agreed to make monthly payments thereafter. Respondent sought and was granted two extensions in September and December 2013, making his Initial Brief and

Designation of Matter due January 3, 2014.  Respondent filed a third extension request on January 8, 2014, in which Respondent claimed he had finished the brief but due to holiday business closures, he was unable to have the necessary copies printed and bound in a timely manner.  The Court of Appeals denied the extension request but indicated its willingness to entertain a motion to file out of time within fifteen days.  Respondent failed to file a motion to file out of time or submit the Initial Brief and Designation of Matter.  The Court of Appeals ultimately dismissed the appeal in March 2014.  Respondent continued to request fee payments from Client D in February, April, May, and June of 2014 and accepted a fee payment of $300 from Client D on February 25, 2014.

In February 2015, after unsuccessful attempts to contact Respondent, Client D called the Court of Appeals and was informed his appeal had been dismissed due to Respondent's failure to file the required documents.  Client D subsequently filed a complaint with ODC.  In his answer to ODC's inquiry, Respondent explained that he had completed the majority of the legal research but had not completed the brief.  Respondent also claimed to have been unable to contact Client D and claimed that was a violation of the fee agreement by Client D; however, Client D produced screenshots of text messages from Respondent that belied this assertion.

Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (competence); Rule 1.3 (diligence); Rule 1.4 (communication); Rule 1.5(f) (refund of prepaid fees if legal services are not provided); Rule 1.16 (withdrawal from representation); Rule 3.2 (reasonable efforts to expedite litigation); Rule 3.3 (knowingly making a false statement of fact to a tribunal); Rule 8.1(a) (knowingly making a false statement of fact in a disciplinary matter); 8.4(d) (engaging in conduct involving dishonesty); and 8.4(e) (engaging in conduct prejudicial to the administration of justice).

## **Matter E**:

Client E, through his father, retained Respondent in January 2010 to assist him in seeking a sentencing reduction under Fed. R. Crim. P. 35(b) Client E's parents paid Respondent $3,000.  Respondent traveled to Virginia to visit Client E to discuss the information Client E had given the government during his federal prosecution.

In May 2015, Client E filed a complaint with ODC alleging that he had called, emailed, and written Respondent numerous times and had not received a response from Respondent in over a year.

During the disciplinary investigation, Respondent falsely claimed he spoke with various federal agents, including an Assistant United States Attorney (AUSA); however, the AUSA had no notes of any conversation with Respondent, and Respondent was unable to produce any notes or documentation about contact with that AUSA or any of the other federal agents he claimed to have contacted. Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (diligence); Rule 1.4 (communication); Rule 8.1(a) (knowingly making a false statement of material fact in a disciplinary matter).

**Panel Hearing and Report**:

Respondent appeared at the first Panel hearing in November 2017 and was represented by counsel. Because Respondent had admitted the misconduct in his Answer to the Formal Charges, the only issue at the Panel hearing was the appropriate sanction. Respondent called two character witnesses who testified they fully trusted him as a vigorous advocate for his clients and believed that the instances of dishonesty were out of character for Respondent.

Respondent also presented testimony that his home burned down in December 2012 causing him to lose almost all his material possessions, including his computer which contained client files. Respondent argued that he took responsibility for his misconduct and claimed that as a result of having to go through the disciplinary process, he was a more attentive, communicative lawyer. He also expressed his desire to "move forward as a lawyer" and explained that he had contingency plans in place to ask for help when he needed it.

The Panel found the most egregious aggravating factor was Respondent's dishonest or selfish motive. Specifically, the Panel observed Respondent made false statements to two separate tribunals in order to conceal his lack of diligence from the court and his client and to avoid the consequences of his actions. The Panel found this lack of honesty "highly troubling." The Panel was also troubled by Respondent's false statements to Disciplinary Counsel during the course of the investigation of Matters A, D, and E, as well as Respondent's pattern of misconduct, multiple offenses, and prolonged periods of no contact with his clients.

As mitigating factors, the Panel acknowledged Respondent's house fire in December 2012; however, the Panel noted certain misconduct occurred before and several years after the fire and that the house fire would not mitigate dishonest conduct. The Panel also considered Respondent's character witnesses and his expression of remorse about his misconduct.

A divided Panel ultimately recommended that Respondent receive a three-year suspension, with one of the five members voting for disbarment. All five members concurred in the recommendation that Respondent be ordered to pay costs and restitution in the amount of $4,200 to Client D and $2,000 to Client E.

## II.

As previously noted, three days after the final record on the first set of charges was filed with this Court, ODC requested that the matter be stayed in light of additional complaints against Respondent, which are summarized below. Respondent failed to submit a written response to several Notices of Investigation in the second set of Formal Charges, and he failed to appear at the Panel Hearing. Thus, all of the misconduct at issue in the second set of Formal Charges has been admitted. Rule 24(a)–(b), RLDE, Rule 413, SCACR.

**Matter F**:

Respondent was appointed to represent Client F, who was charged with attempted murder. Respondent was appointed in the case on June 2, 2017. Respondent replied to an email from the solicitor in February 2018 regarding a plea offer, but nothing was ever finalized. Respondent failed to appear for a meeting to discuss the case with the solicitor the following week and failed to return the solicitor's subsequent phone call or emails.

In April 2018, Client F filed a complaint with ODC alleging Respondent would not communicate with him about his case, and ultimately another attorney was appointed to represent Client F. During the disciplinary investigation, Respondent falsely claimed to have spoken with the solicitor about Client F's case "a few times," including once when they were both in court on other matters.

Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.4 (communication), Rule 8.1(a) (knowingly

making false statement to ODC), and Rule 8.1(b) (knowingly failed to respond to ODC's inquiry).

## Matter G:

Client G was charged with several counts of larceny, and Respondent was appointed in the case on January 3, 2018. Client G filed a complaint with ODC four and a half months later, complaining Respondent failed to visit him, failed to respond to his letters or otherwise communicate about the case, and failed to appear for two scheduled preliminary hearings. Respondent failed to respond to the Notice of Investigation in this matter. Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.4 (communication) and Rule 8.1(b) (failure to respond to ODC's inquiry).

## Disciplinary Counsel Matter:

Respondent was scheduled to appear for jury selection in federal court on July 11, 2018. The day before he was scheduled to appear, Respondent called and spoke to the Courtroom Deputy to request a continuance, claiming he had been subpoenaed to appear as a witness at the Supreme Court. Respondent implied that someone from ODC had informed him that the ODC matter took precedence over jury selection. Respondent failed to disclose that he was subpoenaed in a matter in which he was a party, not merely a witness, and lied to the Courtroom Deputy about when he received the subpoena, claiming he received the subpoena approximately two weeks after he was personally served. Respondent failed to respond to ODC's inquiry about this matter.

Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (diligence); Rule 3.3 (candor toward the tribunal); Rule 8.4(d) (conduct involving dishonesty); Rule 8.4 (e) (conduct prejudicial to the administration of justice); and Rule 8.1(b) (failing to respond to ODC's inquiry).

## Matter H:

Respondent was appointed to represent Client H on several drug charges. Respondent failed to communicate with his client for fourteen months, despite multiple attempts by Client H and his wife to contact Respondent. Respondent failed to respond to ODC's Notice of Investigation in this matter.

Respondent's conduct violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (diligence); Rule 1.4 (communication); Rule 3.2 (reasonable efforts to expedite litigation); and Rule 8.1(b) (failure to respond to ODC's inquiry).

**Matter I**:

Client I and several other taxi owners paid Respondent $3,000 to represent them in a dispute with the Columbia Metropolitan Airport. Respondent filed a civil case in Richland County in November 2016. Upon the airport's motion, venue was transferred to Lexington County in June 2017, after which Respondent stopped communicating with his clients. After multiple unanswered phone calls and text messages to Respondent, Client I contacted the Lexington County Clerk of Court to inquire about the status of the case and was informed the court was waiting for Respondent to schedule mediation with opposing counsel. During the course of representation, Respondent failed to keep client ledgers or perform trust account reconciliations, preventing the Receiver from being able to reimburse any unearned fees.

Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.4 (communication); Rule 1.15 (failure to properly identify and safeguard client funds); Rule 8.1(b) (failure to respond to ODC's inquiry); Rule 8.4(e) (conduct prejudicial to the administration of justice); and Rule 417, SCACR (failure to maintain trust account ledger records).

**Commission on Indigent Defense Matter**:

Respondent was a Rule 608 Contract Attorney through the South Carolina Commission on Indigent Defense (SCCID) for several years. Hervery Young, Deputy Director and General Counsel for SCCID, was alerted by the Richland County Public Defender's Office that they had received several complaints from clients that Respondent was not communicating with them, that they could not get in touch with him, and that Respondent had failed to appear for hearings. Young emailed Respondent and went to his office but never received any response. Shortly thereafter, the Public Defender's Office informed Young that Respondent had requested to be relieved on all of his Rule 608 cases due to a conflict of interest. However, Respondent failed to provide a list of his Rule 608 clients.

At a hearing before the Chief Administrative Judge, Respondent presented a "Notice of Protection Pursuant to S.C. Code § 8-27-10 et seq. and Request for Appropriate Court Order." Respondent claimed:

> I'm working with the U.S. Attorney's Office and have been meeting with the FBI regarding a very wide, sweeping range of corruption, bribery, extortion, threats throughout the Solicitor's Office, the Sheriff's Department, including Judges, lawyers, and Congress members. Other than that, I do not wish to answer any questions. But I am, in fact, a material witness at this point and have already begun giving them information. So I am invoking the protections of the Whistleblowers Act under South Carolina law.

Respondent claimed it would be a conflict of interest for him to represent his clients in front of judges or have dealings with the Solicitor's Office, the Sheriff's Office, or the Columbia Police Department because he was a whistleblower.

Young informed the court that numerous clients had complained about Respondent's lack of diligence and communication and explained his own difficulty in contacting Respondent, all of which resulted in Respondent's Rule 608 contract not being renewed for the 2018-2019 fiscal year. Young also explained that Respondent was paid $900 or $950 per case at the time each client was assigned to him and requested that Respondent be required to refund unearned fees on the cases in which he was seeking to be relieved. Respondent objected, claiming Young's request constituted retribution under the whistleblower statute.

On August 30, 2018, Judge Newman ordered Respondent to provide a list of all his Rule 608 clients' names by 5:00 p.m. the next day. Respondent failed to produce a list of clients. SCCID was forced to go through the approximately 225 cases in their database that had been assigned to Respondent over the previous five years and compare documents with the county clerks' offices with the public index and jail records to determine which matters were still pending. Eventually, Judge Newman issued a series of orders relieving Respondent from representation of 37 clients.

Young filed a complaint with the Office of Disciplinary Counsel in November 2018, in which he requested reimbursement in the amount of $32,100 based on Respondent's failure to perform the services for which he was contracted.[2]

Respondent failed to respond to the Notice of Investigation in this matter. However, the ODC investigation revealed that Respondent had not provided substantial assistance to the government in any investigation or prosecution.

Respondent's conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (diligence); Rule 1.4 (communication); Rule 3.2 (reasonable efforts to expedite litigation); Rule 3.3 (candor toward tribunal); Rule 8.4(d) (conduct involving dishonesty); 8.4(e) (conduct prejudicial to the administration of justice); and Rule 8.1(b) (failing to respond to ODC's inquiry).

**Second Panel Hearing and Report**:

Respondent failed to appear at the second Panel hearing. ODC presented witnesses detailing the extraordinary efforts required to personally serve Respondent with notices and case-related documents.

Also, Young testified that of the SCCID cases Respondent had been assigned, numerous cases were lacking discovery motions, and in many cases, Respondent had not even filed a notice of appearance. Respondent never provided the circuit court or SCCID with any time sheets, and Young requested that SCCID be reimbursed for unearned fees that were paid to Respondent.

Once again, the Panel considered Respondent's selfish and dishonest motive in attempting to conceal his own failures, particularly in creating a false story about being a whistleblower in a federal investigation in an attempt to be relieved from his appointed cases and avoid returning the unearned fees. The Panel also noted Respondent's pattern of misconduct and multiple offenses, his prior disciplinary offenses, his failure to cooperate, and his false statements during the disciplinary process. The Panel recommended that Respondent be disbarred, ordered to pay costs and restitution in Matter I ($3,000) and in the Commission on Indigent Defense Matter ($32,100). The Panel also recommended Respondent be ordered to

---

[2] The requested reimbursement amount represents payment on 23 cases at $900 each and 12 cases at $950 each.

reimburse the Lawyers' Fund for Client Protection for all claims that have been paid on Respondent's behalf.

## III.

We find Respondent violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (violation of the Rules of Professional Conduct); Rule 7(a)(3) (failing to respond to a lawful demand from a disciplinary authority); Rule 7(a)(5) (conduct tending to pollute the administration of justice); and Rule 7(a)(7) (violation of a valid court order). We further find Respondent's misleading conduct and failure to maintain the dignity of the legal system violated the Lawyer's Oath found in Rule 402(h)(3), SCACR.

Considering the numerous instances of misconduct combined with Respondent's deception of his clients, the courts, and ODC, we accept the Panel's recommendation and disbar Respondent. *See In re Lapham*, 412 S.C. 541, 552–53, 773 S.E.2d 148, 153–54 (2015) (disbarring attorney who failed to respond to clients, failed to perform work or refund unearned fees, and engaged in dishonest conduct); *In re Jennings*, 321 S.C. 440, 449, 468 S.E.2d 869, 874–75 (1996) (disbarring attorney for, among other things, dishonest conduct and lack of candor toward a tribunal).

Within thirty (30) days of the date of this opinion, Respondent shall enter into an agreement with the Commission on Lawyer Conduct to pay the $5,451.81 in costs incurred in these matters. Also within thirty (30) days of the date of this opinion, Respondent shall repay or enter into a repayment plan to reimburse the Lawyers' Fund for Client Protection for all claims it has paid on behalf of Respondent and to pay restitution in the following amounts: (1) $4,200 to Client D; (2) $2,000 to Client E; (3) $3,000 to Client I; and (4) $32,100 to SCCID.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of this Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**